RUSHING *et al. v.* SIKES.

No. 9035. JULY 14, 1932.

*John W. Sheppard,* for plaintiffs in error.
*Henry H. Durrence,* and *R. M. Girardeau,* contra.

GILBERT, J. ■ The first, and we think the controlling, issue is whether or not the question of title is res adjudicata. It appears without contradiction that the First National Bank of Claxton brought ejectment against W. F. Anderson to recover the land in question. ˙Anderson filed an answer in which he set up the fact that he was in possession of the land as the head of a family under a homestead duly and previously set apart. That case proceeded to verdict and judgment. So far as the record discloses, that judgment has never been set aside or reversed. It is therefore conclusive, not only upon Anderson, but all whom he represented as quasi trustee. Civil Code (1910), § 5943. As the head of the family he did represent, as to the homestead interest, all of the beneficiaries. That has been conclusively adjudicated by this court. "A homestead estate is in the nature of a trust estate of which the head of the family is the trustee; and a judgment rendered in a suit brought against the head of the family as such, seeking to subject the homestead estate to the payment of a debt alleged to belong to the class of debts for the payment of which the homestead could be rendered liable, will be binding upon the beneficiaries of the homestead, although they are not parties to the action." *Wegman Piano Co.* v. *Irvine,* 107 *Ga.* 65 (32 S. E. 898, 73 Am. St. R. 109). The facts of that case were very similar to the facts of this case. Except as to the amount and names, it may be said that the two cases are identical. In the opinion, written by Mr. Justice Cobb, the principles of law are clearly stated. In addition to the authorities there cited, we refer to *Willingham* v. *Slade,* 112 *Ga.* 418 (37 S. E. 737), which also cites a number of authorities; *Evans* v. *Piedmont National B. & L. Asso.,* 117 *Ga.* 940 (3), 944 (44 S. E. 2); *Faison* v. *Lanier,* 164 *Ga.* 742 (2) (139 S. E. 540).

A casual reference might lead to the inference that what is here ruled conflicts with the ruling in *Snelling* v. *American Freehold Land Mortgage Co.,* 107 *Ga.* 852 (33 S. E. 634, 73 Am. St. R. 160). But the facts differentiate the two lines of decision. The opinion in the *Snelling* case contains the following: "When property which has been set apart as a homestead is levied upon under an execution against the head of a family, founded upon a debt to the payment of which the homestead estate is not liable, the head of a family is such a trustee for the beneficiaries of the homestead that he may interpose a claim in their behalf and set up their rights

under the homestead to have the property protected from sale. *Bartlett* v. *Russell,* 41 *Ga.* 196. When such a claim is interposed, the head of the family represents the beneficiaries of the homestead to the same extent that any trustee would in such a case represent the beneficiaries of the trust. The general rule is, that those represented by the trustee would be bound by a judgment against him as such, although they were not parties to the proceeding in which the judgment was rendered. *Zimmerman* v. *Tucker,* 64 *Ga.* 432; *Barfield* v. *Jefferson,* 84 *Ga.* 609 [11 S. E. 149]; *Wegman Piano Co.* v. *Irvine,* 107 *Ga.* 65 [supra]. This rule, however, does not apply, if the plaintiff, knowing that the trust estate is not liable, nevertheless brings the suit for the purpose of charging the trust property with the payment of a debt for which the trustee is only personally liable; and in such cases, to render a judgment having that effect conclusive upon the beneficiaries of the trust, it must appear that they were sui juris and were parties to the suit, or consented to the judgment. *Meyer* v. *Butt,* 44 *Ga.* 469." Fraud will take such a case out of the general rule, as it will invalidate any contract or judgment procured by fraud. So the *Snelling* case cites the *Wegman* case as stating the general rule which we are now following. It also cites two previous cases which are cited in the *Wegman* case. The decision in the *Snelling* case was based on fraud—"not only of implied but of actual fraud." No fraud or collusion is charged in this case. The opinion in the *Snelling* case also declares that "There is nothing in this ruling to conflict with the decision made in the case of *Wegman Piano Co.* v. *Irvine,* supra." We have no means of knowing what the evidence was on the trial of the ejectment case brought by First National Bank against Anderson. We do know that the verdict and judgment were for the bank, and it is not shown to have been reversed or set aside. It is true that the security deed made by Anderson to Edwards, Smith & Co. recited a consideration of $800, and also contained the following: "This conveyance is intended to cover all future advances that may be made by said Edwards, Smith and Company to the said W. F. Anderson, as well as for debt heretofore stated." Whether any "future advances" were made or not, the court has no way of ascertaining, because it is not explained in the present record. Neither is shown the nature of the antecedent debt. The record does not disclose how these debts were incurred. In these

circumstances we must infer that on the trial of the ejectment suit these facts were all brought out and submitted by the court to the jury on the law of the case applicable thereto. "No court or ministerial officer in this State shall ever have jurisdiction or authority to enforce any judgment, execution, or decree against the property set apart for such purpose, including such improvements as may be made thereon from time to time, except for taxes, for the purchase-money of the same, for labor done thereon, for material furnished therefor, or for the removal of incumbrances thereon." Constitution, art. 9, sec. 2, par. 1; Civil Code (1910), § 6583. On the trial the issue as to the homestead was fully made in the answer to the suit; so we are driven to the conclusion that the question of whether or not the debts were such that the homestead estate could be made liable was adjudicated in that case favorably to the bank. In the *Snelling* case a direct attack was made on the judgment which was being enforced against homestead property, and it was prayed that it be decreed of "no binding force and effect against" the beneficiaries.

It is obvious that the ruling which we have made controls the case. The assignments of error in the bill of exceptions and citations of authority in the brief of counsel are numerous. They are well stated, and in the main, standing alone, they contain sound abstract principles. However, none of the contentions made by the plaintiffs in error can avail anything, for the reason that the title to the land has already been adjudicated, by a court of competent jurisdiction, to have been at the time of the trial in First National Bank, which transferred it to the present defendant in error.

The validity of the judgment in the ejectment suit is attacked on the ground that the description of the property in the security deed and in the judgment is insufficient to constitute a valid conveyance or a valid judgment. The description as to three sides of the tract of land is unquestioned. The attack is made on the boundary given as to the east side. The description as to that side is "on the east by lands of George Kerby." It is insisted that the lands on the east side were originally part of the 137-1/2 acres set aside to W. F. Anderson as a homestead, and that therefore the eastern boundary is a portion of the larger tract of the same land, and, since the quantity of land is given as "more or less," the description of the boundary is wholly insufficient. We do not think

this position is tenable. The Kerby lands, referred to in some instances as 30 acres and in other places as 28, being composed of two still smaller tracts of 6 and 22 acres, had been acquired by Kerby previously to the execution of the security deed by Anderson to Edwards, Smith & Co. Therefore when the last-named security deed was executed and the Kerby lands were given as one of the boundaries, in the absence of anything showing the contrary it must be assumed by this court that the land could be ascertained by extraneous evidence. It is true that it is also urged that the Kerby deeds were invalid. That, however, does not necessarily compel the conclusion that there was not a recognized line between the Anderson lands and the Kerby lands as they were then known. For these reasons, it can not be held that the description in the security deed was insufficient. What has been said above leads to the conclusion that the judgment in the ejectment suit as to the 115 acres is binding upon all parties until it is set aside. There is no prayer in the answer of the defendants in this case seeking to have that judgment set aside for any reason. All that has been said above with reference to upholding the judgment in the ejectment suit has reference to the 115 acres described in the Anderson security deed. As to the 28 or 30 acres we hold, as the title to these tracts was not adjudicated in the ejectment suit mentioned in the preceding division of this opinion, and since there was no authority of the court to sell that land, nor any pretense of authority, that regardless of description those deeds were ineffectual to convey the homestead interest. The plaintiff in this case shows no legal or equitable ground upon which to enjoin the defendants from their occupancy of this smaller tract. The judgment granting injunction must be modified so that it applies only to the 115 acres described in the security deed to Edwards, Smith & Company, and not to the tract which Anderson undertook to convey to the Kerbys, composed of the 6 and the 22 acres.

*Judgment affirmed in part and reversed in part. All the Justices concur.*